Wilder, J.
The bill of exceptions purports to contain all the evidence given on the trial in the court below. A motion was made for a new trial, but what disposition was made of such motion does not distinctly appear. If overruled, the record no where shows that any exception was taken to the overruling of the motion. It was held in the case of Ide v. Churchill and others, decided by this court at' the present term, that “ a motion to set aside the finding, overruled by the court, and an exception taken to the decision of the court, upon the motion, are indispensable prerequisites to the right to review the facts upon petition in error.” We can not, therefore, review the facts in this case. The defendants, in their answer, denied that the plaintiffs had any “ real estate in,”- or were entitled to the -possession of the land in controversy. This issue being tried by the court, and found for the defendants, *393 we are bound to presume that such finding was based upon sufficient evidence, and a judgment for the defendants properly followed. As between the adult plaintiffs and the defendants, the same is true in respect to the counterclaim of the defendants. The court found the existence of the mistake, as alleged in the counterclaim, and that it ought to be corrected. The court -thereupon rightfully proceeded as against the adult plaintiffs, by its decree, to correct the mistake and to reform the deeds.
The fourth error assigned is, that “ the court ’erred in permitting incompetent testimony to be received.” We have carefully looked through the bill of exceptions, to ascertain upon what this assignment is based, and can discover the existence of no such error.
The plaintiffs’ counsel, in their argument, point out two items of testimony which they claim to have been erroneously received.
1. They state that Beatty testified, “that he intended to purchase, or supposed he was buying, the land to and along the fence, including the strip in controversy, as certainly as any other part of the premises.” In this, counsel are mistaken. The testimony of Beatty, as shown by the bill of exceptions, was, “ the plaintiff said that he intended to purchase, or supposed he was buying,” etc.; which was clearly competent testimony.
2. That Henry C. Hedges, who reduced the contract to writing, was permitted to testify, that in describing the land sold, as containing one hundred and twenty-five acres, he intended “ thereby to comprehend the whole balance of the quarter.” The bill of exceptions shows that the witness, after relating the conversation which took place between the parties and himself at the time the contract was drawn, proceeded as follows: “ Whereupon he supposing the quarter section contained the legal quantity of one hundred and sixty acres, by mental calculation, subtracting thirty-five acres from one hunch’¿d and sixty acres, supposed there would be one hundred and twenty-five acres left, described the premises in the contact as one hundred and twenty-five acres off of the north *394 side of the quarter, intending thereby to comprehend the whole balance of the quarter.” This testimony of Hedges indicates the manner in which he proceeded to carry out the intention of the parties, and how it happened that the mistake was carried into the written contract. So regarded, the evidence was not incompetent. But, suppose it to be true, that his intention to comprehend “ the whole balance of the quarter ” in the contract was an immaterial fact ? The witness had already related what the parties had said, the instructions they had given. The evidence from which‘the court was to ascertain the intention of the parties, was before it. The witness super-added an immaterial part, but we do not see how this, under the circumstances, could have prejudiced the rights of the plaintiffs. “ In order to justify the reversal of a judgment on error, the record must affirmatively show, not only that error intervened, but that it was to the prejudice of the party seeking to take advantage of it.” Scovern v. The State, 6 Ohio St. Rep. 288.
So far, we discover no error in the proceedings of the court below. But another question remains. ■ On the facts stated in the defendants’ counterclaim, though found by the court to be true, were the court warranted in decreeing a reformation of the deed of the guardian of the minor plaintiffs to Beatty, and that their “ whole title and estate ” in the land in controversy, “be vested in said David Beatty his heirs and assigns?” The written contract of March 9, 1856, is made part of the defendants’ answer. In this contract the lands sold are described as follows : “ The following described premises situate in the county of Richland in the State of Ohio, and being one hundred and twenty-five acres off of the north side of the northwest quarter of section number thirty-four, of township number twenty-one, of range number eighteen.” The contract was executed, not by the minor plaintiffs, but by Jabez Cook as their guardian. This part of the contract was a covenant that he would institute proceedings in the probate court, to obtain an order of sale of bis wards’ interest in said land, and if Beatty became the purchaser, to make to him “ a deed pursuant to the order of court and the statutes of Ohio.” TI . de *395 fendants aver, in their counterclaim, that the same erroneous description of the land was carried into all the proceedings in the probate court, and into the guardian’s deed to Beatty. The premises, therefore, ordered to be sold by the probate court, and which were in fact afterward appraised, advertised and sold, did not embrace the land in controversy. As against the minor plaintiffs, is it material what were the intentions or understanding of their guardian, or what were his personal covenants? He could sell his wards’ land only through the order of the probate court. Whatever, his intention or understanding was, he could not go beyond the authority given him by the court. This power to sell was derived from the court, and was limited to the execution of its order. The land in controversy was not ordered to be sold, nor advertised for sale, nor in fact sold. Under such circumstances it could not be given, by the decree of another court, to Beatty. A court of equity may aid the defective execution of a power, but can not generally supply the want of power. Tiernan v. Beam and others, 2 Ohio Rep. 383; Mahon v. Reeve, 6 Blackford, 215.
This, also, may well be considered in reference to the rights of the minor plaintiffs. Who can say, that if more land had been offered, another bidder would not have appeared and given a greater price ? As to Beatty, he obtained by his deed all the land that he in fact bought. He may, indeed, have supposed he was purchasing more, but in such case the doctrine of caveat emptor is well applied.
We are of opinion, therefore, that the court below erred in reforming the guardian’s deed to Beatty, and in giving to the latter the interests of the minor plaintiffs in the land in controversy.
So much, therefore, of the decree of the district court, as directs the reformation of the guardian Jabez Cook’s deed to Beatty, and “ that the whole title, interest and estate ” of the minor plaintiffs in the land in controversy, “be vested in said David Beatty his heirs and assigns,” is reversed. The judgment and residue of said decree are affirmed.
Peck, C.J., and Brinkerhoee, Scott, and Rannet,JJ., concurred.